**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**KENNETH SAVIO,**

             **Plaintiff,**

**v.**                                                              **Civil Action No. 2:21-CV-00480**

**SHANNON WILSON, Ranking Billing Dept.**
**Employee, STONERISE SKILLED NURSING**
**FACILITY, AETNA INC., Medicare Division, Legal**
**Department,**

             **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court are ***Defendants Parkersburg Acquisition LLC d/b/a Stonerise***

***Parkersburg and Shannon Wilson's Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint, or,***

***in the Alternative, Motion for Summary Judgment*** (ECF No. 1-4 at 31-36), filed on August 16,

2021, in the Circuit Court of Wood County, West Virginia[1], and ***Defendant Aetna Inc.'s Motion***

***to Dismiss Plaintiff's Complaint*** (ECF No. 4) accompanied by its ***Memorandum of Law in***

***Support of Defendant Aetna Inc.'s Motion to Dismiss Plaintiff's Complaint*** (ECF No. 5), both

filed on September 3, 2021. By Administrative Order entered on August 31, 2021, this matter was

referred to the undersigned United States Magistrate Judge for the submission of proposed findings

of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) (ECF No. 2).

Having examined the Complaint (ECF No. 1-1) and pleadings of record, and having considered

---

[1] This particular Motion does not appear on the Court's Motions Report, because as noted *supra*, it was filed during the State court proceeding prior to removal, and it was the undersigned's position that refiling of the same pleading in this Court may have unnecessarily confused the *pro se* litigant with duplicative filings.

1

the pertinent legal authority, the undersigned has concluded that the ***Motions to Dismiss*** should be **GRANTED** for the reasons stated *infra*:

### Plaintiff's Factual Allegations

In his Complaint, filed on July 20, 2021, in the Circuit Court of Wood County, West Virginia, Plaintiff alleges that Defendant Shannon Wilson "falsely" reported to her employer, Defendant Stonerise, of a verbal agreement that Plaintiff would personally bear the costs of inpatient services he received from Stonerise from March 15 through March 18, 2021 (ECF No. 1-1). Plaintiff further alleges that Defendants Stonerise and Aetna "played along with the fraud" despite Plaintiff's "vigorous protestations" to paying for his care "out of his own pocket." For relief, Plaintiff requests: the repayment of $1,413.37 "paid mostly, and quite foolishly, by Plaintiff's wife from our joint account while Plaintiff was absent, incapacitated and helpless at a different inpatient care facility"; this Court to recommend the Wood County prosecuting attorney to investigate and to pursue criminal charges against Defendants; $5,000 from each Defendant for punitive damages; and $5,000 in "exemplative damages."

### Procedural History

As noted *supra*, on July 20, 2021, Plaintiff filed his Complaint in the Circuit Court of Wood County, West Virginia (ECF No. 1-1). On August 16, 2021, Defendants Shannon Wilson (hereinafter referred to as "Wilson") and Stonerise Skilled Nursing Facility (hereinafter referred to as "Stonerise") filed their Motion to Dismiss/Motion for Summary Judgment (ECF Nos. 1-2, 1-4 at 31-36). On August 27, 2021, Defendant Aetna, Inc. (hereinafter referred to as "Aetna") removed this matter to this Court (ECF No. 1) and subsequently on September 3, 2021, filed its Motion to Dismiss along with the supporting Memorandum of Law (ECF Nos. 4, 5).

2

On September 7, 2021, the Court issued <u>Roseboro</u> notices[2] (ECF Nos. 6,7), directing Plaintiff to file a response to Defendants' motions no later than September 24, 2021. On September 10, 2021, Plaintiff filed a "Pleadings in Toto" (ECF No. 8), "Arguments for Denying Defense Motion to Dismiss" (ECF No. 11), as well as "Plaintiff's Reiteration of Lower Court Pleadings" (ECF No. 13).[3] On September 28, 2021, Wilson and Stonerise filed their "Reply to Plaintiff's Purported Response to Rule 12(B)(6) Motion to Dismiss Plaintiff's Complaint, or, in the Alternative, Motion for Summary Judgment" (ECF No. 15). Thereafter, on October 4, 2021, Plaintiff filed "Further Arguments for Denying Defendant Shannon Wilson and Stonerise's Motion to Dismiss Pursuant to Rule 12(B)(6), In Light of Their Latest Pleading (Entitled "Reply to Plaintiff's Purported Response")" (ECF No. 16). On October 8, 2021, Aetna filed its "Reply to Plaintiff's Response to Motion to Dismiss Plaintiff's Complaint" (ECF No. 17). Finally, on October 18, 2021, Plaintiff filed a "Plaintiff's Likely Final Affidavit in Summary Support of His Pleadings" (ECF No. 18), accordingly, this matter is ripe for decision.

### Wilson and Stonerise's Argument in Support of Dismissal

Wilson met with Plaintiff on March 9, 2021 to discuss that he had insurance coverage for treatment at Stonerise up to 100 days, although this was not guaranteed (ECF No. 1-1 at 39). Wilson and Stonerise note that Plaintiff was fully aware of this and indicated he could pay for expenses not covered by insurance (<u>Id</u>. at 38). While receiving care at Stonerise as a resident, and paid for by Plaintiff's insurer, Aetna, on March 12, 2021, Stonerise received a "Notice of Medicare

---

[2] Pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975).
[3] Plaintiff also filed a "Motion that Court Should Appoint Him Pro Bono Counsel" (ECF No. 12) explaining that he attempted to "enlist" an officer of the Parkersburg Police department to investigate the crime allegedly committed against him and that he unsuccessfully attempted to obtain representation from "six or seven attorneys", each of whom declined to represent him in this matter.

Non-Coverage" (NOMNC) notifying that effective March 14, 2021, coverage for Plaintiff's skilled nursing services would end. Plaintiff executed the NOMNC, acknowledging that he was notified that coverage of services would end on March 14, 2021 (Id. at 40-41). Though the NOMNC outlined the appeal procedure concerning Aetna's decision, Plaintiff did not do so. Plaintiff continued treatment at Stonerise, and became a private-pay patient from March 15 to March 18, 2021. On April 26, 2021, Plaintiff and/or his wife made a payment to Stonerise in the amount of $1,300, leaving a balance due of $95 (Id. at 42).

Wilson and Stonerise characterize Plaintiff's Complaint as an unfounded "quick cash-grab", and that his medical records make clear he was very well aware that his insurance had ceased coverage and that the executed NOMNC clearly demonstrates there was no "verbal-only pledge" by Wilson. Plaintiff's allegations of fraud are nothing more than general averments unsupported by any alleged factual basis. Plaintiff's claims for relief lack merit, as he was properly billed for services rendered, and that he even paid $1,300 for same, despite still owing $95; his claims for punitive damages are improper and without legal support; it is uncertain what Plaintiff means by "exemplative" damages.

### Aetna's Argument in Support of Dismissal

Aetna[4] contends Plaintiff's Complaint fails to state a claim, and further asserts that this Court lacks subject matter jurisdiction because the alleged cause of action arises under the

---

[4] Aetna advises it is the parent company of Coventry Health Care of West Virginia, Inc., and is a health insurance company that participates in the Medicare Part C Medicare Advantage Program by offering a Medicare Advantage Plan known as "Aetna Medicare Advantra Silver Medicare (HMO) Plan"; of interest to this lawsuit, Plaintiff maintained the Aetna Medicare Advantra Silver Medicare (HMO) Plan. (ECF Nos. 4-2, 5 at 2) Nevertheless, for purposes of this Proposed Findings and Recommendation, the undersigned simply refers to this Defendant as "Aetna" as identified by Plaintiff in his Complaint.

4

Medicare Act, which preempts state law claims. (ECF No. 4)

Aetna points out that the Medicare Act, 42 U.S.C. §§ 1395-1395ggg, is a federal program governing the costs of certain healthcare services for the aged and disabled, and that the Centers for Medicare and Medicaid Services (CMS), a branch of the Department of Health and Human Services (HHS), administers the Medicare program. (ECF No. 5 at 4) The Medicare Act provides four separate benefit options, of which Plaintiff participated in Part C, the Medicare Advantage program, under 42 U.S.C. §§ 1395w-21-1395w-29. The Medicare Advantage program governs Medicare Advantage Organization (MAO) and Medicare Advantage Plans (MA Plans); Aetna, by way of its subsidiary insurance company, Coventry, is a MAO, and subject to the reimbursement provisions of the Medicare Secondary Payer Act (MSP). As a MAO, Aetna, via Coventry, must comply with strict statutory qualifying standards and requirements established by CMS, which has oversight over MAOs pursuant to 42 U.S.C. § 1359b-9 and 42 C.F.R. § 422.504(a). Of interest here, Aetna asserts that because Congress wanted to ensure that MA Plans and the MAOs that administer them are subject to a uniform set of standards, it enacted a broad preemption provision, and because Plaintiff's state clams are premised on the assertion that Aetna unlawfully denied payment of benefits under the Medicare Act, these claims are preempted by federal law.

Alternatively, Plaintiff's claims must be dismissed because he failed to exhaust administrative remedies – the Medicare Act has mandatory administrative procedures for disputes related to the administration of benefits under 42 U.S.C. § 1395w-22(g); 42 C.F.R. §§ 422.560-626. If a party was dissatisfied with an MAO's determination of his rights or benefits, he can request that the decision be reconsidered (see 42 C.F.R. § 422.578), if that decision is affirmed, he could then seek reconsideration of that decision by an independent outside entity that contracts

with CMS (see Id. 422.592). If the party is still dissatisfied with the outcome, he has a right to a hearing before an Administrative Law Judge (ALJ) (see Id. 422.600); the ALJ's ruling may be appealed to a district court pursuant to 42 U.S.C. § 405(g).

Aetna emphasizes that because Plaintiff failed to follow through with each level of the administrative appeals process, without resulting in a "final administrative decision" by an ALJ, this Court lacks subject matter jurisdiction over his claims. Additionally, despite Plaintiff's couching his claims as state law matters, his claims are nonetheless "inextricably intertwined" with a claim for Medicare benefits, precluding jurisdiction. Heckler v. Ringer, 466 U.S. 60, 614-615 (1984).

### Plaintiff's Responses in Opposition to Dismissal

In his "Pleadings in Toto" (ECF No. 8), Plaintiff seeks punitive damages "of at least $30,000" and asserts that if the "court mandating the payment to Plaintiff of punitive damages, then Plaintiff DOES NOT OBJECT to removal of his initial complaint & summons OUT" of state court. (emphasis in original) Plaintiff realleges that he stayed at Stonerise from March 8 to March 17, 2021 and that this was pre-approved by Aetna. Plaintiff alleges that he owes nothing for his stay at Stonerise; Plaintiff compares this to the time he stayed at another skilled nursing facility from April 17, 2021 to April 26, 2021, and that Aetna approved his entire time there, and he was not "charged a single dime" for his stay.

Plaintiff also disputes the authenticity of the NOMNC – there was no agreement between Plaintiff and Stonerise that he would pay out of pocket for his care. Plaintiff appears to concede that he received a copy of the NOMNC, but argues the notice only stated "that coverage is 'likely' to cease, but with no exact odds". Plaintiff contends that Stonerise and Wilson "bilked Plaintiff for

about $1,500" for services and that he "pursued every reasonable avenue of grievance", including writing a letter to Stonerise when he received the bill, and through several phone calls to Aetna's customer service.

Plaintiff also argues that the exhibits attached to Stonerise's motion are "self-serving" and "pure invention . . . pure subterfuge." Plaintiff appears to take issue with how Stonerise billed Aetna for Plaintiff's care.

In his "Arguments for Denying Defense Motion to Dismiss" (ECF No. 11), Plaintiff denies Aetna's assertion that he failed to exhaust his administrative remedies, and again points out that he "fired off a stern and matter-of-fact letter to them denying liability and suggesting that they, Stonerise, pursue their contractually-mandated routine of filing claims with patient's insurance." Plaintiff again emphasizes that he made "dozens of phone calls" to Aetna, and that he filed an official grievance concerning his March 15-18, 2021 claim. He asserts that Aetna did a poor job of investigating his claim, and "concluded yet another unjustified whitewash." Plaintiff again states he lodged a complaint against Stonerise with the Parkersburg police to investigate possible criminal intent, and that he filed a grievance against Aetna with the State Insurance Commission, however, these pursuits went nowhere.

Plaintiff attaches two additional exhibits, labelled "Exhibit #12" and "Exhibit #13". The first exhibit is a letter from Aetna dated August 13, 2021, in response to Plaintiff's grievance. Plaintiff states Aetna's letter has an incorrect admission date, March 6, 2011, as he asserts he was admitted to Stonerise on March 8, 2021. Plaintiff's second exhibit concerns a copy of an "After-Visit Summary" from Camden-Clark Hospital that he states proves he was hospitalized at Stonerise on March 8, 2021.

In "Plaintiff's Reiteration of Lower Court Pleadings", Plaintiff wants the Court to be certain it is in possession of all his pleadings filed in the state court matter, and realleges that he is not liable for Stonerise's in-patient services provided to him from March 15, 2021 through March 18, 2021. (ECF No. 13) Plaintiff asks for the return of the $1,413.47 that was paid to Stonerise – "(this was obtained from Plaintiff's wife after Shannon Wilson applied subterfuge and duress at a time, April 18, 2021, when Plaintiff was absent, incapacitated and helpless, at a different inpatient care facility)"; Plaintiff asks for $10,000 in punitive damages from each Defendant.

## Wilson and Stonerise's Reply

Wilson and Stonerise argue that Plaintiff's collective responses, *supra*, fail to address any of the relevant facts asserted in their motion to dismiss, and only appears to dispute whether the NOMNC was valid or to contend that this document is irrelevant to Plaintiff's claims. (ECF No. 15) These Defendants further assert that Plaintiff's acknowledgement that the NOMNC stated coverage was likely to cease on March 14, 2021, and this does nothing to demonstrate any actual dispute of material fact. These Defendants point out that Plaintiff fails to address the billing statement they attached to their motion, and are puzzled by Plaintiff's request for additional punitive damages, but nevertheless assert they are without any factual or legal support.

## Plaintiff's "Further Arguments" in Response to Wilson and Stonerise's Reply

Plaintiff insists that despite what the NOMNC says, coverage did not cease, and that his entire 9-day stay at Stonerise was covered by Aetna. (ECF No. 16)

## Aetna's Reply

Aetna points out that not only does Plaintiff not dispute that his claims arise under the Medicare Act, but also despite his assurances otherwise, he has failed to exhaust his administrative

8

remedies. (ECF No. 17) In fact, in order for Plaintiff to bring this matter to this Court, he could only do so after receiving a final administrative decision, and that would have required bringing an action against the Secretary of HHS as a defendant, a necessary party, which Plaintiff also failed to do.

### Plaintiff's "Likely Final Affidavit in Summary Support of His Pleadings"

Plaintiff's final pleading reiterates the arguments he made in prior filings, and disputes Aetna's points concerning exhaustion of administrative remedies, appearing to argue that "no claim was ever filed by the provider (for the last four days of my stay)" as support for his position that he did not fail to pursue all appeals under the Medicare Act. (ECF No. 18)

### THE STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959.

This Court is required to liberally construe *pro se* documents, holding them to a less

stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W. Va. 2007) (citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir. 1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

### Discussion

After having liberally reviewed Plaintiff's Complaint, in addition to his subsequent pleadings, it is clear that he has failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Despite Plaintiff's pronouncements that each Defendant has committed a species of larceny, he only provides "naked assertion[s]" which are verboten pursuant to the jurisprudence

espoused under <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Moreover, Plaintiff's claims, which can be attributed to fraud, fail to comply with the general rules of pleading as set forth in Rule 9(b) of the Federal Rules of Civil Procedure, which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Pro. 9(b). Although Plaintiff alleges that Wilson "falsely" reported to Stonerise that Plaintiff verbally agreed to private pay for expenses incurred from March 15 through March 18, 2021, Plaintiff also alleges that his wife "foolishly" paid $1,413.37 (ECF No. 1-1)[5]. Plaintiff also admits he signed the NOMNC on March 12, 2021, which explicitly states that coverage "will end" effective March 14, 2021 (ECF No. 1-4 at 40-41). Whether coverage did or did not end on that date is of no moment, Plaintiff's protestations on that point notwithstanding, because the facts alleged by Plaintiff fail to comport with the heightened pleading standard set forth in Rule 9, and does nothing to further his allegations of being defrauded.

In short, Plaintiff's claims arising from misrepresentation or fraud are simply conclusory statements. See <u>United States ex rel. Bunk v. Gov't Logistics N.V.</u>, 842 F.3d 261, 275 (4th Cir. 2016) ("In simple terms, a plaintiff complies with Rule 9(b) by, 'at a minimum, describ[ing] the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.' "); <u>Heslep v. Americans for African Adoption, Inc.</u>, 890 F. Supp. 2d 671, 683 (N.D.W. Va. 2012) ("The heightened pleading

---

[5] Of interest here is that according to Stonerise, Plaintiff and/or his spouse paid $1,300 on April 26, 2021 (ECF No. 1-4 at 42). Indeed, documents filed on August 11, 2021 in the Wood County Circuit Court proceeding included an "Attachment #1, page 1 of 2", signed by Plaintiff, and dated July 19, 2021, indicated that "during a subsequent hospitalization, my wife contacted me quite distressed and frantic, veritably terrorized, wanting to pay their mailed bill (addressed to me only) that deceitfully stated 'Your insurance has been billed; the balance you owe is as follows'. Not wishing for my wife to suffer so greatly, I permitted her to pay it out of our joint account, knowing that I would sue those scoundrels later." (<u>Id</u>. at 19)

requirements for fraud claims prompt a careful inquiry into the plaintiffs' . . . allegations."). Clearly, the crux of Plaintiff's claims concerns a billing dispute; the fact that Plaintiff admits that he begrudgingly "permitted" his wife to make a payment to Stonerise for the services not covered by Medicare just does not demonstrate fraud.

Regardless of this legal shortcoming, Plaintiff's claims are clearly preempted by federal law: "The standards established under this part [Part "C", 42 U.S.C. § 1395w-21 et seq.] *shall supersede any State law or regulation* (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part." See 42 U.S.C. § 1395w-26(b)(3) (emphasis added); see also 42 C.F.R. § 422.402. There is no question that Plaintiff lawsuit concerns a payment that he and/or his wife "foolishly" paid for Medicare services that Plaintiff contends were covered under his insurance plan through Aetna. There is no dispute that Plaintiff participated in the Medicare Advantage program, or that Aetna is a Medicare Advantage Organization or that Aetna, via Coventry, managed a Medicare Advantage Plan on behalf of Plaintiff. Notwithstanding the claims of fraud, duress, larceny, etc., this action only concerns a dispute regarding Medicare benefits. Indeed, Plaintiff is asking this Court to reimburse him for the payment he made that he contends he was not liable for, due to having insurance coverage. To that end, the undersigned finds this case is rather analogous to Bucker v. Heckler, 804 F.2d 258 (4th Cir. 1986), where the Fourth Circuit found that the plaintiff's action requesting for repayment or reimbursement of alleged overpayment for medical services were preempted by the Medicare Act, given that the dispute concerned Medicare benefits.[6]

---

[6] Cf., Baker v. HM Insurance Company, 2015 WL 6159482 (N.D.W. Va. Oct. 20, 2015) (Medicare Act did not preempt plaintiff's claims that Medicare providers fraudulently deceived and lied to her in order to receive benefits without having to part with anything of value, however, court found it lacked subject matter jurisdiction and remanded case). It is important to recognize, for purposes of the action at bar, the facts presented in the Baker case are not

Moreover, there is no evidence that Plaintiff exhausted his administrative remedies, which are mandatory under the Medicare Act:

> An enrollee with a Medicare+Choice plan of a Medicare+Choice organization under this part who is dissatisfied by reason of the enrollee's failure to receive any health service to which the enrollee believes the enrollee is entitled and at no greater charge than the enrollee believes the enrollee is required to pay is entitled, if the amount in controversy is $100 or more, to a hearing before the Secretary to the same extent as is provided in section 405(b) of this title, and in any such hearing the Secretary shall make the organization a party. If the amount in controversy is $1,000 or more, the individual or organization shall, upon notifying the other party, be entitled to judicial review of the Secretary's final decision as provided in section 405(g) of this title, and both the individual and the organization shall be entitled to be parties to that judicial review. In applying subsections (b) and (g) of section 405 of this title as provided in this paragraph, and in applying section 405(l) of this title thereto, any reference therein to the Commissioner of Social Security or the Social Security Administration shall be considered a reference to the Secretary or the Department of Health and Human Services, respectively.

See 42 U.S.C. § 1395w-22(g)(5); 42 U.S.C. § 405(h)(4) (Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides . . . The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the [Secretary], with or without remanding the cause for a rehearing."); see also <u>Heckler v. Ringer</u>, 466 U.S. at 614; <u>Buckner v. Heckler</u>, 804 F.2d at 259 (affirming dismissal of plaintiff's claim to Medicare-related overpayment because plaintiff had not first exhausted administrative remedies).

Despite Plaintiff's confusion that exhaustion of administrative remedies is inapplicable in this case, as no "claim" was filed that he had been dissatisfied with (ECF No. 18 at 2), the fact of the matter is that Plaintiff himself asserts that he did submit a "claim" disputing (showing

---

analogous to those presented in the action at bar.

dissatisfaction with) that he owed anything for Stonerise's services after March 14, 2021: he wrote a "stern" letter disputing his bill. (Id. at 1) Nevertheless, there is no evidence that Plaintiff's efforts in disputing his bill went beyond writing a letter and several phone calls. There is no evidence that this matter was ever brought before an ALJ for a hearing as required under federal law. There is simply no "final decision" from which this Court could even exercise subject matter jurisdiction. In short, Plaintiff did not exhaust his administrative remedies as required under federal law that provides the necessary legal foundation that would allow him to file an action with this Court entitling him to relief.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT _Defendants Parkersburg Acquisition LLC d/b/a Stonerise Parkersburg and Shannon Wilson's Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint, or, in the Alternative, Motion for Summary Judgment_** (ECF No. 1-4 at 31-36) and **_Defendant Aetna Inc.'s Motion to Dismiss Plaintiff's Complaint_** (ECF No. 4).

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the

14

basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on any opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to the *pro se* Plaintiff and to counsel of record.

ENTER: October 19, 2021.



Omar J. Aboulhosn
United States Magistrate Judge